The **INTERNATIONAL FUND FOR ANIMAL WELFARE, et al., Plaintiffs,**

v.

**Malcolm BALDRIGE, et al., Defendants;**

**Tanadgusix Corporation, Intervening Defendant.**

**Civ. A. No. 84–1838.**

United States District Court, District of Columbia.

June 28, 1984.

Patrick M. Raher, David J. Hayes, Washington, D.C., for plaintiffs.

Donald A. Carr, Eileen Sobeck, for federal defendants.

Stephen M. Truitt, Susan D. Sawtelle, Washington, D.C., for intervening defendant.

## MEMORANDUM

GESELL, District Judge.

This action, filed on June 15, 1984 by three animal welfare organizations, seeks to enjoin the killing of 22,000 subadult male seals scheduled to commence next Monday, July 2, 1984 on the Pribilof Islands in Alaska, as authorized by the Fur Seal Commission (Commission) established by the Interim Convention for the Conservation of the North Pacific Fur Seal, 8 U.S.T. 2283, to which the United States is a signatory. Tanadgusix, an Alaska native corporation which will undertake the killing pursuant to a contract with the Secretary of Commerce, has intervened as a defendant.

Plaintiffs argue that the planned killings would violate the Fur Seal Act (FSA), 16 U.S.C. sections 1151, *et seq., as amended,* the Marine Mammal Protection Act (MMPA), 16 U.S.C. sections 1361, *et seq.,* and the National Environmental Policy Act (NEPA), 42 U.S.C. sections 4331, *et seq.* The case is now before the Court on plaintiffs' motion for preliminary injunction and intervening defendant's motion to dismiss. A hearing was held on these motions on June 26, 1984, and all issues have been fully briefed. At that hearing the Court indicated that it might consolidate the hearing on plaintiffs' motion with a trial on the merits pursuant to F.R.Civ.P. 65(b)(2), and the Court has done so. Because the Court concludes that the actions of the Secretary are not inconsistent with the statutes cited, plaintiffs' motion for preliminary injunction must be denied and judgment entered in favor of defendants on the merits.

Under the Convention, the Commission determines each year, after scientific review, the number of seals which may be killed at rookeries by the signatory nations consistent with the Convention's goal of maintaining a stable long-term seal population. The United States has been authorized to kill 22,000 subadult male seals during the coming season, although it is not legally bound to do so. Thirty percent of the pelts from any seals killed are to be turned over by the United States to other signatory countries under the terms of the Convention.[1] The Secretary of Commerce (Secretary) has announced that the United States intends to kill the full 22,000 seals as authorized, and has contracted with Tanadgusix to undertake the seal kill pursuant to the Fur Seal Act.

*The Fur Seal Act*

Plaintiffs claim that the Fur Seal Act is being violated because the Secretary has failed to promulgate regulations governing the seal kill authorized by section 105(a) of the FSA, 16 U.S.C. section 1155(a), and because that section allows seal killings

only if such killings are necessary for the "conservation, management, and protection of the fur seal population" or are necessary "to carry out the provisions of the Convention." Section 105(a) states:

> *The Secretary shall prescribe such regulations* with respect to the taking of fur seals on the Pribilof Islands and on lands subject to the jurisdiction of the United States *as he deems necessary and appropriate for the conservation, management, and protection of the fur seal population,* and to dispose of any fur seals seized or forfeited pursuant to this chapter, and to carry out the provisions of the Convention, and shall deliver to authorized agents of the parties such fur seal skins as the parties are entitled to under the Convention. [Emphasis added].

. It is readily apparent from the plain language of the statute that the Secretary need only issue regulations "as he deems necessary" and is not required to do so. The Secretary has offered an adequate explanation for why he does not consider regulations to be necessary. Moreover, it is also clear, both from the statute itself and from the background of the 1980 amendments to the FSA which added this provision, that the language referring to "the conservation, management, and protection of the fur seal population" is intended to guide the issuance of regulations and not to place substantive restrictions on the circumstances under which seals may or may not be killed. Plaintiffs have thus failed to show that the planned seal kill violates the FSA.

*Marine Mammal Protection Act*

The MMPA establishes a moratorium on the killing of marine mammals whose number has fallen below the "optimum sustainable population" (OSP) level. 16 U.S.C. section 1371. There is no dispute that the fur seal population in the North Pacific is below this level, and plaintiffs argue that

---

**1.** In addition to the United States, Japan, Canada, and the Soviet Union are signatories to the Convention. Japan and Canada are each entitled to 15% of the pelts obtained from the forthcoming killings under the Convention's terms.

the planned killings are therefore barred by the MMPA. A separate section of the MMPA, however, provides that these provisions "shall be deemed to be in addition to and not in contravention of the provisions of any existing treaty, convention, or agreement, or any statute implementing the same, which may otherwise apply to the taking of marine mammals." 16 U.S.C. section 1383.

■ It is apparent that under the present conditions the substantive terms of the MMPA contravene the Convention and the FSA. The Convention clearly grants the United States the right to conduct the planned seal kill and, while the United States is not absolutely required to do so, the general purpose and scheme of the Convention contemplates that it would undertake the kill and share the pelts obtained with Canada and Japan. Moreover, 16 U.S.C. section 1378(b)(1)(B) of the MMPA, which directs the Secretary of State to consider what modifications to either the MMPA or the Convention should be made "to make the Convention and this chapter consistent with each other," also seems to recognize that a conflict exists between the Convention and the MMPA.

In addition, the Fur Seal Act specifically authorizes the Secretary of State, with the concurrence of the Secretary of Commerce, "to accept or reject, on behalf of the United States, recommendations made by the Commission [as to the number of seals to be taken] pursuant to article V of the Convention," 16 U.S.C. section 1158, and the Secretary of State has in fact already accepted those recommendations, placing the operation of the Convention in full effect as to the 1984 killings. This provision, which was in effect prior to passage of the MMPA and has since been reconsidered and reenacted in the 1983 amendments to the FSA, does not appear to contemplate that the discretion vested in the Secretaries of State and Commerce in making such a foreign policy decision was to be constrained by the strictures of the MMPA.

The Court concludes, therefore, that the substantive provisions of the MMPA contravene the Convention with respect to the particular killings at issue here, and that hence under section 1383 the Convention takes precedence. The actions of the Secretary therefore do not violate the restrictions on the killing of marine mammals imposed by the MMPA.

*National Environmental Policy Act*

Plaintiffs' final contention is that the planned seal kill violates NEPA in that no adequate environmental impact statement (EIS) was prepared covering the kill. Specifically, plaintiffs claim that a 1980 EIS prepared in contemplation of a four-year extension of the Convention failed to undertake, as required by NEPA, a cost/benefit analysis of the killings, a "worst-case" analysis, and an analysis of the cumulative impact of the annual killings allowed by the Convention. Additionally, they contend that the 1980 EIS must in any event be reconsidered because of a continuing decline in the seal population not contemplated by that EIS.

Contrary to plaintiffs' assertion that the 1980 EIS concerned only the impact of the renewal of the Convention and not the annual kills, that document specifically addressed the impact of annual kills through 1984 at levels even greater than that planned for this year.[2] Once an EIS has been properly filed for an ongoing annual program, each year's activity need not be the subject of a new or supplemental EIS if the program has not been expanded or revised. 40 C.F.R. section 1502.9(c)(1)(i). *See also Scientists' Institute for Public Information, Inc. v. Atomic Energy Commission,* 481 F.2d 1079, 1088 (D.C.Cir. 1973); *Humane Society of the United States v. Watt,* 551 F.Supp. 1310, 1322 (D.D.C.1982), *aff'd,* 713 F.2d 865 (D.C.Cir. 1983). No such changes have been made here.

■ An additional EIS is necessary where "[t]here are significant new circum-

**2.** *See* Admin. Record Doc. 1, Final Environmental Impact Statement on the Interim Convention on Conservation of North Pacific Fur Seals, at vi, ix, 21, 28–29 (September 1980).

stances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. section 1502.9(c)(1)(ii). Even if the decline in the seal population is such a circumstance, however, the draft EIS which the Secretary prepared and published in October of 1983, addressed to the proposed extension of the Convention beyond its expiration in October of 1984, is sufficient to fulfill the Secretary's NEPA obligations. The draft EIS, which the Secretary fully considered before accepting the recommendations of the Commission, specifically addresses the decline in the seal population and the impact of future kills on this problem.[3] The Secretary has thus not failed to prepare an EIS directed to the planned killings.

 Plaintiffs' remaining NEPA claims, which go to the sufficiency of certain elements of the 1980 EIS, are barred by the doctrine of laches.[4] Plaintiffs have been involved in the issue of the killing of North Pacific fur seals for several years and have had ample opportunity to challenge the use of the 1980 EIS in conducting the annual kills in 1981, 1982, and 1983. They did not do so. The delay in presenting these claims, raised only now in a last-minute appeal to this Court for injunctive relief preventing the 1984 killings, is therefore unreasonable, even given the Secretary's delay in announcing whether the United States would conduct killings pursuant to the Convention this year. Moreover, defendants have been substantially prejudiced by this delay. It is now impossible to revise the 1980 EIS prior to the upcoming seal killing season, which cannot be extended past approximately the end of July. The result of even a preliminary injunction would likely be a disruption of the United States' efforts to carry out the purposes of the Convention, the impediment of its abili-

ty to negotiate for an extension of the Convention and, of considerable significance, the loss to Tanadgusix of a contract worth approximately $1 million which would provide employment for 81 of the 550 Alaska natives on St. Paul Island. Even if plaintiffs could show that the 1980 EIS did not fully comply with the requirements of NEPA, therefore, such claims are barred by the doctrine of laches.

*Conclusion*

 For the foregoing reasons, the Court concludes that plaintiffs have failed to show that the impending seal kill violates any statutory provision. Accordingly, plaintiffs' motion for preliminary injunction must be denied, and, the hearing on this motion having been consolidated with a decision on the merits, judgment must be entered in favor of defendants.[5]

---

**3.** *See* Admin Rec.Doc. 3, Draft Environmental Impact Statement on the Interim Convention on Conservation of North Pacific Fur Seals, at 26, 34–37 (October 1983).

**4.** *See Save Our Wetlands, Inc. v. U.S. Army Corps of Engineers,* 549 F.2d 1021, 1027–28 (5th Cir.1977); *Peshlakai v. Duncan,* 476 F.Supp. 1247, 1256 (D.D.C.1979).

**5.** The Court thus need not reach the issues raised in intervening defendant's motion to dismiss.